JIMMY SWAGGART MINISTRIES, a Louisiana Nonprofit Corporation, Appellant,

v.

CITY OF ARLINGTON, and Arlington Independent School District, and Dick Rhodes, Assessor-Collector for the City of Arlington; and Lanier Wilson, Assessor-Collector for the Arlington Independent School District and Larry Hammonds, Assessor-Collector for the Arlington Independent School District and the County of Tarrant, and Reed Stewart, Assessor-Collector for the County of Tarrant and the Tarrant County Appraisal Review District, the Appraisal Review Board of Tarrant County and Vinita Tribble, as Supervisor of the Exemption Section for the Tarrant County Appraisal District, Appellees.

No. 2–86–010–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 9, 1986.

Jones, Day, Reavis & Pogue, Robert Meyers III, Dallas, for appellant.

John C. Stewart, Asst. City Atty., Arlington, Cantey, Hanger, Gooch, Munn & Collins, S.G. Johndroe, Jr., Gerald Summerford, Perdue, Brandon & Fielder, C. David Fielder, Fort Worth, for appellees.

Before HOPKINS, FARRIS and HUGHES (Retired, Sitting by Assignment), JJ.

## OPINION

HUGHES, Justice (Retired, Sitting by Assignment).

Appellant, plaintiff below, appeals from the trial court's denial of its motion to reinstate its suit after it was dismissed for want of prosecution.

We affirm.

Appellant filed suit in January of 1978, contesting appellee taxing authorities' failure to recognize as tax-exempt certain real and personal property it owned which was used in connection with the radio station it owned and operated. Appellant sought tax-exempt status on the basis that the property was an "actual place of religious worship ... used exclusively to support and serve the spread of a religious faith ... by the dissemination of information on a religious faith through radio, television and similar media of communication," under former Civil Statute Article 7150 sec. 1(a).[1]

Appellant's suit remained on the trial court's docket for over seven years. On August 9, 1985, the district court issued its notice of intent to dismiss appellant's suit on September 16, 1985. On September 27, 1985, appellant's suit was ordered dismissed for want of prosecution. On October 30, 1985, the district court clerk mailed a bill of costs for the dismissal to appellant's counsel, Jones, Day, Reavis and Pogue (Jones, Day). On November 15, 1985, appellant moved to reinstate its suit. After a hearing on appellant's motion, the trial court denied reinstatement for lack of jurisdiction.

The trial court's findings of fact and conclusions of law were made in the form of a memorandum to all counsel of record and read as follows:

Gentlemen:

I have this date signed an order denying the plaintiff's Motion to Reinstate for lack of jurisdiction. I believe that the evidence is insufficient to invoke the extension of time under Rule 306a, Tex.R. Civ.P. *Inter alia,* the plaintiff's docket clerk, Ms. Seely, testified that she had not seen or examined the Tarrant County docket for either dismissal notices or orders of dismissal; and while neither Mr. Middleton nor Mr. Coleman actually saw the order of dismissal, there is no evi-

dence that it was not received by the "mail room" personnel or even "central files" at plaintiff's law firm; and there is evidence that both the monthly docket containing the notice of intent to dismiss and the one containing the order of dismissal were prepared by the clerk and mailed in the routine fashion and directed to the proper address (at which in fact, the cost bill was received) and that it was not returned to the clerk which it would have been had it not been delivered. That the system employed by plaintiff's law firm did not work to route the docket and its information to the correct attorney or that the docket clerk had not been given proper instruction does not support a finding that a properly addressed and mailed docket was not received by the law firm, thus giving it the actual notice contemplated by the law.

Proving a negative is inherently difficult, but all signs point to the fact that mail form [sic] the clerk to the proper address was in fact delivered and that improperly addressed or undelivered dockets would be returned. While it was not argued, I will observe that there is no showing that the requirements of Rule 246 were met.

This memorandum constitutes the Court's findings and conclusions under Rule 296, Tex.R.Civ.P.

By points of error one and two, appellant alleges the trial court erred in denying reinstatement because its finding that the notice of the order of dismissal was mailed was against the great weight and preponderance of the evidence. Appellant argues that, since there was insufficient evidence of mailing, the presumption of receipt did not arise, and there was no evidence or insufficient evidence of receipt by appellant's attorney of the notice of dismissal.

■ Appellant had thirty days following the order of dismissal in which to file its motion to reinstate. *See* TEX.R.CIV.P.

1. Taxation—Exemption, ch. 336 sec. 1, 1967 Tex. Gen.Laws 802, *repealed by* Act of June 13, 1979, ch. 841, sec. 6(d) 1979 Tex.Gen.Laws. 2330 (currently codified at TEX. TAX CODE ANN. sec. 11.20 (Vernon Supp.1986)).

165a(2). However, if within twenty days of the signing of the order neither appellant nor his attorney had received notice or acquired actual knowledge of the dismissal, the thirty day time period did not begin until appellant or his attorney received such notice or aquired such actual knowledge. *See* TEX.R.CIV.P. 306a(3) and (4).

It is undisputed appellant did not file its motion to reinstate within thirty days of the court's dismissal order. It was appellant's burden, then, to show it did not receive notice or aquire actual knowledge of the trial court's order of dismissal before November 7, 1985, when it received the court's bill of costs notifying it of the dismissal.

The facts adduced at trial concerning mailing of the court's order of dismissal were as follows. Brenda Sealy testified she began working as Jones, Day's docket clerk in May or June of 1985. She described her general responsibility as receiving documents and calendaring events for the lawyers who had cases pending in litigation. However, she received no training regarding the Tarrant County docket notice system when she began her job. A monthly docket was brought to her by one of the firm's lawyers for the first time in September of 1985. The next monthly docket she received was for the month of December, after she requested it from the district clerk's office. Sealy did not receive or sort the mail coming into the firm each day. She received the mail only after it had been opened, and then routed to her from the lawyers and/or secretaries. The mail addressed generally to Jones, Day was sorted by the central files clerk. After learning of the dismissal, Sealy checked her files and the central files and did not find any dockets from previous months.

The next witness to testify was Robert Coleman, attorney of record in appellant's suit. He testified he became aware of the suit's dismissal for the first time on November 11, 1985, when he received a memo from another attorney with the bill of costs attached. Coleman testified he had not received the monthly docket or any indication of dismissal prior to that time. Coleman determined the cost bill had been forwarded from the central files clerk to one of the litigation partners, who in turn forwarded it to Coleman. Upon receiving the cost bill, Coleman contacted Judy Sims, the trial court clerk, and learned for the first time of the notice of intent to dismiss and the dismissal order issued by the court.

Robert Myers, another attorney with Jones, Day, testified he did not receive any type of notice from Tarrant County or from the trial court concerning the instant suit during the months of August through October 1985. He first became aware of the suit's dismissal when he received a copy of the cost bill on November 8, 1985, transmitted to him from another Jones, Day attorney. Myers verified the address on the bill of costs was correct.

The stipulated testimony of a third attorney, Robert Middleton, established his responsibilities in the litigation section of the firm included receipt and review of all notices not directed to a particular attorney. Middleton stated he did not receive the Tarrant County monthly docket for the months of August through December of 1985. He stated he normally would have received them from the firm's central file clerk.

Judith Kay Sims, clerk for the trial court, testified concerning the mailing procedures of the district clerk's office. She testified she personally sent a copy of the September docket, properly addressed to Jones, Day, on August 9, 1985. That court docket contained the court's notice of intent to dismiss appellant's suit on September 16, 1985. Sims testified she thereafter mailed a copy of the docket containing the dismissal order to Jones, Day at the proper address, as well. Sims testified since neither docket was returned to the court by the post office, she assumed Jones, Day had received them. She sent the cost bill, on or about October 30, 1985, to the same address.

On cross-examination, Sims described the docket as an approximately 150 page document containing notices of intentions to dismiss, jury settings, and other notices.

She described the different steps involved in mailing out the docket and admitted she did not actually do the mailing. She did, however, discharge her duty in the mailing process relating to appellant's suit. Sims testified she had been instructed by the district clerk's office that she was not required to list the individual attorney of record's name, as a long as the firm's name was listed.

Direct testimony that a letter was properly enclosed in an envelope which was correctly stamped, addressed, and deposited in the mail gives rise to a rebuttable presumption that it was duly received. *Cooper v. Hall*, 489 S.W.2d 409, 415 (Tex. Civ.App.—Amarillo 1972, writ ref'd n.r.e.). If no direct evidence shows a person mailed the letter in question, an inference of mailing may be raised by showing the customary mailing practice in connection with the sender's address. *Id.* Denial of receipt is, however, sufficient to rebut the presumption and present a fact issue for the jury. *Gulf Ins. Co. v. Cherry*, 704 S.W.2d 459, 461 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ Here, the court clerk's testimony raised the presumption of mailing and receipt when she stated she personally prepared the docket notices and properly addressed them to Jones, Day. Although there was no direct evidence of actual mailing, her description of the customary mailing procedure in the district clerk's office, whereby the dockets were stuffed in envelopes and mailed out, and her preparations of the address label for Jones, Day, allowed the presumption of mailing and receipt to arise.

In attempting to rebut this presumption, appellant presented the testimony of three of Jones, Day's attorneys, and its docket clerk. They each testified they did not receive any notice of the court's intent to dismiss or of the dismissal order, until November 7, 1985 when the firm received the cost bill. Their testimony also established, however, that mail addressed generally to the firm would initially be handled by the mail room clerk, and then forwarded to the central files clerk. There was no evidence

the relevant docket notices were not received by either of these clerks or by other attorneys in the firm. For this reason, the evidence presented by appellant was insufficient to amount to a denial on its part of receipt of the notice of dismissal by the firm. Appellant's points of error one and two are overruled.

By point of error three, appellant argues the trial court erred by erroneously applying the teachings of *A. Copeland Enterprises, Inc. v. Tindall*, 683 S.W.2d 596 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.) to a fact situation in which no evidence established notice of dismissal was actually received by an agent of appellant's attorney.

We held in *Copeland* that notice to a litigant's "attorney of record" under TEX. R.CIV.P. 165a and 306a is satisfied when notice is given to the attorney of record's law firm as a whole. *Id.* at 599.

As we discussed above, sufficient evidence of mailing, from which a presumption of receipt arose, was presented to the trial court, and appellant's evidence was insufficient to rebut that presumption. We decline appellant's invitation, in its point of error four, to reconsider our holding in *Copeland* concerning the definition of "attorney of record," as we feel it was and is correct. Appellant's third and fourth points of error are overruled, and the trial court judgment is affirmed.